Good morning. My name is Tim Bechtold and I represent the Appellant's Native Ecosystems Council. And if you could keep your voice up, please. Oh, Gary put this thing down. There's a button somewhere. I got it. Great. Much better. My name is Tim Bechtold and I represent the Appellants in this matter, Native Ecosystems. I'd like to reserve a couple minutes for rebuttal as well. In my town, Missoula, the federal building downtown occupies one big square block and the Forest Service Regional Office occupies that federal building. It's pretty much the only occupant besides a small post office. Last year, one day, there was about 100 people jumping up and down outside that Forest Service office arguing about this, that, and the other thing, talking about government accountability. And it was a tea party. I thought, oh, this is great, because the only people that usually jump up and down outside a Forest Service office are a bunch of Earth Firsters, and they look a lot different than these guys. So finally, the mainstream is talking about making the Forest Service accountable. And the idea behind this case is trying to make the Forest Service accountable, to make them count what counts and make it all put into the same basket and decide when you add everything up whether or not their costs are there. Counselor, can we get a little more specific in terms of you have two issues. One is under NEPA, right? And one is under the Forest Management Act. So tell us specifically what your argument is regarding how the Forest Service violated NEPA. Well, under the APA, if the Forest Service fails to consider an important aspect of the situation, then it's arbitrary and capricious. And NEPA requires more than just generalized conclusory assertions. And so the Forest Service expert in this case, Steve Martin, if his general assertions aren't backed up, then under, what was it, ORNRC fund versus Goodman, then it's not sufficient to comply with NEPA. So your NEPA argument, what about the categorical exclusion? Is NEPA triggered if we agree that the project fell within two of the categorical exclusions under NEPA? So what the Forest Service argument here is that, okay, I don't have to do NEPA as long as it's a CE. So it falls under CE 12 and 13. And the way to figure out if it's a CE or not is whether or not, based on those Forest Service handbook criteria, whether or not it falls under. And if it does, then they don't have to do NEPA of any type. And so the Forest Service argument is, well, you don't have anything to review because we've determined that under the handbook this is a categorical exclusion. So NEPA doesn't apply and you're gone. Well, NEPA doesn't apply, EIS doesn't apply. I mean, so let me ask it this way. Do you contend that this project doesn't fall within either of the two exclusions? Well, under the terms of the Forest Service handbook. Under anything. I mean, are you saying for some reason we should say the exclusions do not apply here and these were not properly excluded? Well, the way that the Forest Service is arguing here is that the only way to determine whether or not exclusion apply is based upon those factors in the handbook. Do you disagree with that? Yeah, I think that NEPA is bigger than that. I think you have to determine if the Forest Service says, because I can't challenge the handbook, you know, there's nothing there for me to challenge. So I have to say, well, it seems to me that this is bigger than just the handbook. It's just applying whether or not there's some more extraordinary circumstances. NEPA says you've got to look at the whole thing. And if you determine there's a category of exclusion, there's no significant effect. Where does it say it? I'm much more comfortable if I've got text, case law. Okay, NEPA says you've got to look at the whole thing. Where does NEPA say what? Well, maybe I should back up and say this, that there are cases in this circuit that say if the Forest Service determines that there's no extraordinary circumstances based upon their reading the handbook, then NEPA doesn't apply and you can just go home. So you have the Forest Service creating a definition of these categorical exclusions, and that's a regulatory action taken under a statute that allows the creation of these where there's no significant effect on the human environment. So your quibble is not with whether these meet the Forest Service own definition of a categorical exclusion. You're saying that when the Forest Service set out to create a 70-acre exclusion, for example, that that's an inaccurate, a mistaken way to determine whether there's a significant cumulative effect on the human environment. Essentially, yes. You just challenged the creation, the organic creation by the agency of the exclusion. Right, in this case. And, Counsel, you didn't take that position in your brief, though. In your brief, you didn't address the use of the exclusions at all, did you? No, I addressed just one thing, and that's whether or not they accounted for the costs. So if you didn't address the exclusions in your opening brief, then how can we say that those should be invalidated, that use of the exclusion should be invalidated on appeal? Well, you can say what you want. Well, we know that. But how can it be justified if you didn't address it in your opening brief? What I did not address was whether or not the use of the exclusions was valid. And what the Forest Service argued in return was, well, because you didn't challenge specifically that the use of the extraordinary circumstances was a valid way of determining whether it complies with NEPA, then you don't get to bring that argument forward. And you didn't file the reply brief. I did not. Anyway, I think what NEPA requires is that the Forest Service has to take a reasoned evaluation of all the relevant factors. And my argument here is... Where does NEPA say that? There's another one of these sort of general statements about what NEPA requires. I'm sorry, that's Selkirk Conservation Society, Forest Grin 336F3944 at 954. You just gave me a case citation. I asked you, where does NEPA say that? I don't know if that's the exact wording of NEPA, but I do know that this circuit has ruled that that's what NEPA requires. That meaning? That's what NEPA requires. That meaning NEPA requires precisely what? A reasoned evaluation of relevant factors. In preparation of an EIS for sure. In preparation of an EA for sure. Does it say anything about a categorically excluded project? Nope. Should I go on an IFMA? Yeah, maybe. Now, the deal here is IFMA requires that the Forest Service take a look at the integrated considerations of the physical, biological, economic, and other sciences. And so NEPA, by its terms, calls economics a science. It's 16 U.S.C. 1604B. And under 1604 G3A, the Forest Service has to consider the economic aspects of its resource management. And the Lewis and Clark Plan requires that the Forest Service conduct an area assessment when there have been significant issues or substantial economic problems in previous sales. But the Forest Service concluded that there had been no problems with previous sales. And my issue is that there have been serious problems with the previous sales. And so what evidence was presented to the Forest Service in your objections that showed previous? In the Administrative Appeal? Right. So what the Administrative Appeal did was put all the series of GA reports into the record and informed the Forest Service that their cost accounting system was invalid. That was global. That was kind of a global argument. But the Forest Service concluded that this particular project had no economic problems with previous sales. Did you introduce anything to contradict that particular conclusion by the Forest Service? During scoping, you mean? Oh, during the Administrative Appeal. Well, it's a C. It's what? It's a C. During the scoping process, the Alliance for Otter Rockies and the Native Ecosystems Councils did indicate to the Forest Service that they thought the economic analysis was not thorough and sufficient because it didn't take into account the sunk costs of repairing the timber sales. Right, but that's your argument regarding the methodology, right? Right. Did you have an argument regarding economic problems with previous sales? Right. So what the appellants told the Forest Service was is that because all the previous sales relied on this invalid methodology, that they had serious problems because they didn't take into account the big budget of the Forest Service that gets sunk into planning timber sales. So in this case, when Steve Martin planned this timber sale, which he scratched out on a single piece of paper, which you see at the excerpt set 2, Steve makes $340 a day, and a large part of the administrative support of the Forest Service is for creation of timber sales. So if all those costs are considered and brought into the equation of the balance of what it costs to create a timber sale and manage a timber sale, then I think that it would be much more accurate. And what the appellants told the Forest Service at the scoping process was simply that, was that they hadn't taken these costs into account and that they asked them to take them into account so they have an actual, accurate depiction of the true cost of what the timber sale costs the American taxpayer. So essentially what the appellants have asked the Forest Service to do is just comply with generally accepted accounting principles. And, you know, when something costs something, to account for it. And the Forest Service acknowledges here that they do not take some costs into account when they plan these sales, when they plan the economics for the sales. So Steve Martin said, you know, I made some estimates based upon my experience of what these things cost, but I do not include some costs. And so we have a large portion of the Forest Service budget that's not included in that analysis at all. What do you do with the Lands Council decision? On the one hand, you say that they're obligated, the Forest Service is obligated to use the best available science. On the other hand, Lands Council counsels not to fly spec the agency about its choice of alternative legitimate scientific methods. But I don't think... There's nothing particularly illegitimate about what the Forest Service has done with its sunk costs here. You can do it one way or another. What do you make of Lands Council on this point? Well, I guess the point here is that the Forest Service has made a choice that is not, that does not fall within generally acceptable accounting principles. And that's what the GAO has told them, and that's what the chief, two different chiefs have agreed with. They said, yeah, you're right, we're not doing it. We should, but we're trying. And so the idea here is the Forest Service has made a choice not to include those, but they've also admitted that it's not the best way and that they'd like to do better. Now, this timber sale planner says, I'm just not counting those. So I think that what the Lands Council decision is, you know, if they've got experts and it's a reasonable way of doing things, you've got to go along with it. Yeah. You know, I'm having trouble with the move that you made. I fully understand why you made it, and it's not an implausible argument. But nonetheless, as I read NIFMA, science means science in the ordinary sense of the term, and doesn't include the dismal science. What makes you say that economic analysis is part of the command for best available science? Well, because of the expressed terms of NIFMA itself, that's 1604B. It says, integrated consideration of physical, biologic, economic, and other sciences. I mean, it considers economics as science, just like Geithner and Summers do. And if we do make that, what's best available science? I mean, we get economists arguing all the time about various things, and you say generally accepted accounting principles, and we all know that generally accepted accounting principles have a wide range of what's accepted and not. Well, in the situation here, we have the BLM and the NCCS, who both account for those sunk costs in their planning of all the projects. BLM manages a lot more land than the Forest Service does, and they can do it. Yeah, I understand they could, but why is that necessarily something they must do? They must do it because they're not taking a significant economic consideration into account. It's like if you say, well, you know, I don't have to take into account any of these costs that support my job and the jobs of all my colleagues, because that's not really part of the question because taxpayers are supporting that. The idea here is the Forest Service has arbitrarily decided to exclude a significant portion of what it costs to create a timber sale and say, we don't take that into account when we determine our costs. And it is arbitrary. Okay. You asked to save some time. I let you run all the way up. Let's hear from the other side, but we'll give you some time in response. May I please the Court? I'm Mark Hague from the Department of Justice for the Forest Service. I guess one place ‑‑ excuse me. I think that the Court's questions reflect an understanding of the issues here, and I don't want to belabor any of these points. I would start with one more general response to NEC's complaints here about the arbitrary nature of the way that the Forest Service does its cost accounting, and that is the cost accounting here is consistent with the Forest Service guidelines on how to account for the cost of timber sales. The Forest Service handbook says not to include fixed costs, and that's not an unreasonable, even putting aside the question of whether it's an abuse of discretion, it's not an unreasonable way for the Forest Service to do it. Okay, let me sort out where you agree and disagree, and where do you start to part company. Do you agree with Mr. Bechtold that the Forest Service is required to use best available science and economics is included in that? I would say yes as a general proposition. Okay. And it does seem to me that he has a point to exclude fixed costs and basically only to use marginal costs as you're trying to figure out costs. That's a slightly odd way to calculate costs, maybe not totally indefensible, but I'm not sure it's the best way. Why do you say it's the best way? Well, I don't say it's the best way, but I can tell you one reason why. But I think you just conceded best available science means best available economics. Why does that also not mean best available accounting principles? I think best available science means facts and information and that the agency, when it's making a decision to do something, it can't ignore information that's out there. So if there's a published study that says you need to have X number of acres to support a particular species, the Forest Service can't just ignore that. Does that mean you're just backtracking from the concession you made at the outset? Because I asked you, does economic science come under the rubric of best available science? And you said yes. And now you're saying science means studies and what's out there and so on, excluding economics. Which one do you mean? I'm not excluding economics, and I think that if the Forest Service did something that was economically indefensible, that would be wrong. But indefensible is very different from best. And I think you conceded, and you can back away from it if you like, that best available science also means best economics. Now, do you mean that or not? I guess the way that you're defining science, I would have to back away from that and say no, because we're not talking about... Accounting systems are a matter of judgment, and which category you put particular costs in is not strictly a question of science, but it's a question of judgment. And let me just say why the way that the Forest Service does it here is reasonable. The NEPA process is designed to inform the decision maker at the time he or she makes a decision. If you include fixed costs in that bottom line number, and you say, well, this sale will cost the government X, the necessary implication from that is, well, if you don't go forward with the sale, then it's not going to cost X, you're going to save that money. But with fixed costs, that's not the case. The Forest Service is still going to pay Steve Martin's salary, it's still going to pay for the field biologists, whether or not the sale goes forward. So as a consistent matter, when the agency is making decisions, it's looking at what will it cost to go forward. Okay, let me respond to that. First off, I'm actually talking about the NFMA rather than NEPA, because I think his stronger argument is under the NFMA, because we've got a categorical exclusion for NEPA. Second, you're right in a sense, but you're wrong in a way, when you say that if you don't do the sale, Steve Martin still gets paid, of course. But it's in the nature of the sorts of fixed costs that we're here talking about. If you make no sales, pretty soon Steve Martin loses his job. I mean, it's fixed only up for a certain point. We're amortizing the expense of carrying him and his colleagues, but if we never do any timber sales, they're gone. Is that true? I'm not sure that's true, because they do lots of other things on the forest too. Well, of course they do lots of other things, but then you reduce the workforce to the point where it's necessary to do the other things that they do. So the fixed cost that's allocated to the timber sales, if you never make any timber sales, pretty soon you eliminate that fixed cost by attrition, by other modes, unless the government is in the business of sort of a works of progress administration of hiring people and retaining them, even though there's no work for them to do. Well, I guess a couple of points, Your Honor. First, the fact that these fixed costs are not included in the number, in the decision document here for what this sale will net the Treasury, does not mean that those fixed costs are not reported and accounted for and explained in the Forest Service's budget and elsewhere. So in terms of amortizing them over the whole year or the whole forest, that information is all there. What the Forest Service chooses not to do, and what the Forest Service handbook tells the Forest Service not to do, is not to include fixed costs in calculating a timber sale. But to bring it back to this particular case, this is a very odd vehicle for making this, what is essentially a policy argument that NEC is making, because on the undisputed facts, this sale falls below all the thresholds in NEPA and also in the Forest Management Act and the Forest Plan for doing financial feasibility analysis. That is on, I believe it's page 21 of the excerpts of record. Yes, we have the Forest Wide Management Standards. The Forest Plan calls for the Forest Service to do economic analysis on some timber sales, and the handbook and the guidelines set out what's supposed to be done in that analysis. But it also sets thresholds, and it says if the sale is below a certain size, or if it raises significant economic problems, those requirements don't kick in. It's undisputed that this sale is below those thresholds. In addition, the Forest Service, I forget what it is, the handbook says that you don't do financial efficiency analysis on sales that involve less than $100,000. Let me ask you this. Assuming this were over the threshold for NIFMA, which I understand you say it's not, but assuming that it is, what function does the economic analysis serve? I mean, let's say the cost turns out to be really high. Then what? Or the cost turns out to be really low. Then what? I mean, is there some concrete consequence that follows once you've made your economic analysis, or is it just there for the public to see? It does both. The initial feasibility analysis, and I think this is all explained, this is explained in the brief and it's explained in Steve Martin's declaration, which is in the record. Before the Forest Service goes forward with the project, it takes an initial look to see whether this makes sense, whether offering the sale is, whether anybody's likely to bid on the sale or buy the sale, whether it is economically feasible at all. And the Forest Service won't go forward with additional environmental analysis if it's not viable. The Forest Service handbook sets out a set of decision points, they call them gateways, where an additional analysis is required to get to the second gateway and then the third gateway. The Forest Plan and the Forest Management Act and the regulations don't prohibit below-cost timber sales, and the Lewis and Clark Forest Plan specifically recognizes that below-cost sales may be necessary to accomplish some of the purposes of the Forest Plan. And the Forest Service carries out forest management activities for multiple purposes, and here the purpose was not primarily financial. The financial analysis is included because of having to get through these gateways, but the purpose of this project is to prevent the spread of an insect infestation. So even if it were the case that this sale is cost, we're costing more than it's bringing into the treasury, that would not be. I think I understood all of your answers except one thing that you said in passing. You said, well, financial analysis was done here because it was necessary to get through these gateways, but I thought you told me earlier that no financial analysis was necessary because of the nature of this project. The Forest Service has a terminology that I have not mastered here. They distinguish between a financial assessment and an economic analysis, and the first one is the threshold, do we want to analyze this project and think about doing it, and that was done here. The second one is the more detailed analysis, and that was not done here because. And that's the one you say is not required. Right, right. But the planters are saying that the financial analysis that you did was not done under the best available science. Is that your understanding? They say that, yes, but all they do is say that. They don't point to any. What about, I was just waiting for you to finish your thought, what about their reference to the GAO reports and the fact that the BLM has a different methodology? What's your response to those observations? Well, those are nationwide policy discussions. I don't think the GAO ever says, the GAO points out problems with the way the Forest Service does it, but the GAO does not say this is unlawful or you're required to do something else, and it's a nationwide analysis. It doesn't go to the facts of this specific sale or this specific forest plan. That's right, that's right. Is there anything about those that you feel supports the idea that this is an illegitimate method of accounting? And I ask that because, as some predicate, Lands Council does seem to suggest that it's not really our task to determine the best available economic analysis here. There's some deference to the agency in making that decision, but I think you'd agree that that's with the caveat that whatever is used has to pass some threshold, has to be a legitimate scientific method or economic method. Yes, I would agree with that. What do you make of whether these complaints from the GAO and elsewhere really delegitimize this method? I don't think they do, and I don't think they purport to, certainly not with respect to a sale at this level, a sale that is this small and that's so far below any of the thresholds that would require additional analysis. Congress is aware of this system that the Forest Service uses. The GAO gave the reports to Congress. If Congress wants to tell the Forest Service to do it differently, it can. But when you're talking about a 65-acre sale that's aimed at preventing an insect infestation, the fact that there's a national report out there that says the Forest Service could account for its costs differently or should account for its costs differently is not a ground for setting it aside. It sounds like there's about a dozen ways you could account for fixed costs as well, if you're trying to divide up what Steve Martin does in a year. Absolutely. It's the fact that those costs have already been expended at the time the decision maker is making his decision. There's the allocation of, you know, if there are road building costs and those can be amortized over other sales. If the biologists are doing surveying here, but that surveying information is going to be used to inform other forest management decisions. It is a complicated process and I don't think there's any one right answer. And there's certainly nothing in the generally the gap that says it needs to be done one way or the other and plaintiffs haven't cited anything in the gap that would support that. Thank you. Thank you. Mr. Beckwith, response. You've used your time, but let's start it with two minutes and see what happens. Perfect. You know, there are a dozen ways for the Forest Service to account for fixed costs, but the point is they're not using any of them. They could use all manner of different methods, but the point is they're choosing to use none of them. And why is it illegitimate to say quite openly we are ignoring fixed costs? We know they're there. Everybody knows they're there. We're not fooling anybody, but for purposes of the number we're giving you here, we are ignoring them. What's wrong with that? Well, what's wrong is that it's because it's not the best available way to do it. And the GAO does say this is not the best available way to do it, and Dale Bosworth said, yeah, you're right. We acknowledge that and you're right. And that's at ER 63 where Bosworth responds to one of the GAO reports. And, again, the Forest Service responds at ER 143 where they say, yeah, you're right, and we're working on that. Do you agree with what I just heard, that there are actually two thresholds here? One is sort of the initial financial analysis, which was done and should have been done, and the other is the more detailed economic analysis, which according to your opponent is not required to be done because of the size of the project. Do you agree with that? Well, there's two things.  determination in the handbook. So the Forest Service has said if we don't think there's economic problems, then we don't do that. So that's the Forest Service determination, but NIFMA requires use of the best available science. And in this case, I don't think that you'll find any economist besides Steve Martin who says it's okay to ignore fixed costs when we make an economic determination. And that's why I think it's a violation. The appellants here chose this timber sale very specifically to try to get their focus on this one specific question, and that is whether or not the Forest Service question of whether or not they use sunk costs in their economic analysis is best available science. So the question before the court is, is it legitimate, is it within the generally acceptable accounting principles to say we ignore sunk costs and just leave it like that? Because what it does is for the whole taxpayer burden on the Forest Service, you're absolutely right. If after a time we find out that people like Steve Martin don't have anything to do, they're not going to be working for the Forest Service. Have you cited some provision of GAAP that's violated here in your briefs? No, I didn't cite anything in the brief other than what the GAO reported. Okay. Thank you. Thank you very much. Thank both sides for their argument. Native Ecosystems Council v. Tidwell is now submitted for decision.
judges: Mosman, Fletcher W. , Rawlinson